UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**DAVID JOSEPH, ROBERT MACIASZ,**
**ANTHONY MANDERACHIA,**
**DENNIS SOKOLA, EDWARD TUTTLE,**
**and WILLIE E. WORTHEN,**
**individual Michigan citizens,**

        Plaintiffs,

v.

**FORD MOTOR COMPANY, a Michigan**
**domestic profit corporation,**

        Defendant.

_____/

Case No. 06-10274

HONORABLE DENISE PAGE HOOD

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This matter is before the Court on Defendant's Motion to Dismiss, filed June 7, 2006. Plaintiffs filed a Response on July 27, 2006 and Defendant filed a Reply on August 10, 2006.

**II. STATEMENT OF FACTS**

Plaintiffs David Joseph, Robert Maciasz, Anthony Manderachia, Dennis Szokola, Edward Tuttle and Willie E. Worthen are current employees of Severstal Corporation at the Rouge Steel facility. Plaintiffs were hired by Defendant Ford Motor Company between 1971 and 1973. (Compl. ¶ 9). Plaintiffs allege that their retirement plan benefits are "in jeopardy" as a result of the Rouge Steel bankruptcy and asset sale to the Severstal Corporation. (Compl. ¶ 3).

Plaintiffs were each Ford hourly employee's and United Auto Workers Local Union No. 600

("UAW") members from their time of hire until 1989 when Ford sold Rouge Steel to the Marico Acquisition Corporation ("Marico"). Plaintiffs allege that, at the time of the sale, they opted to continue employment at Rouge Steel with the benefit of certain promises and assurances made by Ford to Plaintiffs both individually and collectively as members of UAW. (Compl. ¶ 15). Plaintiffs continued to be UAW members until 1992 or later. Between 1992 and 2000, each Plaintiff changed from hourly UAW positions to salaried positions at Rouge Steel. (Compl. ¶ 17). In 2003, Rouge Steel declared bankruptcy and Severstal Corporation bought the company assets, but "only if it was without liability to the four Rouge Steel pension plans, including Plaintiffs' pension plan." (Compl. ¶ 19).

Plaintiffs contend that as hourly employees at the time of the 1989 Marico sale, each retained rights pursuant to a November 28, 1989 Settlement Agreement between Ford and the UAW through the time of the Rouge Steel asset purchase by Severstal. (Compl. ¶ 22). Plaintiffs argue that pursuant to Attachment 9-Letter Regarding the Long Term Security of the Rouge Steel Work Force ("Letter No. 9") to the Ford-UAW settlement agreement, UAW members were promised an opportunity to return to Ford in the event of a future sale of Rouge Steel assets. (Pls.' Resp. at 2, Ex. A). Plaintiffs assert that the promises in Letter No. 9 were to "remain in effect for an employee for a period of time equal to his Ford seniority as of the date of the sale, or for a ten year period following the date of sale, whichever is greater." *Id.* Plaintiffs argue that since each Plaintiff was an hourly employee and had at least 16 years of seniority as of the date of sale, rights vested at the time of the 1989 sale and Plaintiffs had retained rights under Letter No. 9 as of February, 2004. (*Id.* at 3).

Plaintiffs contend that the promise of Letter No. 9 was also incorporated by reference in the

2

Marico Rouge Steel Retention Payment Program Applications ("Retention Payment Application"). (Compl. ¶ 27). The Retention Payment Application states,

> [e]mployees who accept provisions of the retention plan are accepting employment with Marico Rouge Steel and shall have continuous seniority with Marico Rouge Steel Company. Such employees will have only Rouge Steel Company seniority and will have waived all seniority rights with Ford Motor Company, except those which have been agreed to by the parties as described in Letter No. 9.

(*Id.*, Ex. B). Plaintiffs argue that the "applications" are individual contracts between each of the Plaintiffs and Ford. Plaintiffs assert that, beginning in 2003, they sought to return to hourly UAW membership and/or to exercise their contractual rights under Letter No. 9, however, they have been prevented from doing so "through Defendant's negotiations with the UAW, false and misleading representations by and through Ford, and by Ford's outright refusal to honor contractual obligations." (*Id.*).

Plaintiffs' First Amended Complaint alleges: (1) breach of Collective Bargaining Agreement, 29 U.S.C. § 185 (LMRA § 301) ; (2) interference with benefits, 29 U.S.C. § 1140 (ERISA § 510); (3) breach of contract; (4) promissory estoppel; (5) fraud; (6) innocent misrepresentation.

### III.    STANDARD OF REVIEW

Federal Rules of Civil Procedure 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). A court takes the factual allegations in the Complaint as true when evaluating the propriety of dismissal under Fed. R. Civ. P. 12(b)(6). *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509,512 (6th Cir. 2001); *Hoeberling v. Nolan*, 49 F. Supp.2d 575, 577 (E.D. Mich. 1999). Further, the court construes the complaint in the light most favorable to the plaintiff, and determines whether it is beyond a doubt

that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Varljen v. Cleveland Gear Co., Inc.*, 250 F.3d 426, 429 (6th Cir. 2001).

## IV. APPLICABLE LAW & ANALYSIS

Defendant asserts that Plaintiffs' state law claims (breach of contract, promissory estoppel, fraud and innocent misrepresentation) are preempted by federal law and/or ERISA, as they "are substantially dependent upon and inextricably intertwined with the terms of federally-governed labor-management negotiated agreements, and are related to ERISA-governed benefit plans". (Def.'s Mot. to Dismiss at 1).

### A. Preemption Under the Labor Management Relations Act

Pursuant to Section 301 of the Labor Management Relations Act,

> Suits for violations of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). The Supreme Court has held that § 301 preempts state law claims that "substantially implicate the meaning of collective bargaining agreement terms." *DeCoe v. General Motors Corp.*, 32 F.3d 212, (6th Cir. 1994). However,

> even if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is "independent" of the agreement for § 301 pre-emption purposes.

*Id.* (quoting *Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 409-10 (1988). The Sixth Circuit has developed a two-step approach for determining whether section 301 preemption applies:

> First, the district court must examine whether proof of the state law claim requires interpretation of collective bargaining agreement terms. *Terwilliger v. Greyhound Lines, Inc.*, 882 F.2d 1033, 1037 (6th Cir. 1989) (citations omitted). Second, the court must ascertain whether the right claimed by the plaintiff is created by the collective bargaining

> agreement or by state law. If the right both is borne of state law and does not invoke contract interpretation, then there is no preemption. However, if neither or only one criterion is satisfied, section 301 preemption is warranted. *Id.*

*Id.*

Here, Plaintiffs essentially argue that their state law claims are not preempted by the LMRA because Plaintiffs are invoking rights under the Retention Payment Applications, which are individually bargained for contracts. Plaintiffs assert that the "Retention Contracts" would exist as validly enforceable contracts whether or not Plaintiffs were ever members of a collective bargaining unit. (Pls.' Resp. at 6). Plaintiffs assert that the rights they seek to assert are independent of the collective bargaining agreement. *Id.* at 7; *Caterpillar Inc. v. Williams*, 482 U.S. 386, 396 n. 10 (1987) ("not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement is pre-empted by § 301 or other provisions of federal law").

The facts of the parties in *Zimmer v. American Telephone & Telegraph Company of Michigan* are substantially similar. 947 F.Supp. 302 (E.D. Mich. 1994). In *Zimmer*, the court reasoned that

> [d]espite plaintiffs' assertion that Zimmer entered 'separate and distinct' contracts with the employers, by the allegations in his own complaint the separate contracts 'incorporated the terms of the collective bargaining agreement.' Thus, even if Zimmer did enter into individual contracts with the employers, the claims based on those contracts 'rely upon the collective agreement indirectly,' and 'address the relationship between the individual contracts and the collective agreement.' *Caterpillar v. Williams*, 482 U.S. 386, 395 (citations omitted)

*Id.* at 307. The court in *Zimmer* found that plaintiffs' state law claims are "intextricably intertwined with consideration of the terms of the labor contract[s]" between the Union and the employers and are preempted by § 301. *Id.*

Similarly, by virtue of the fact that Plaintiffs' claims are based on the Retention Payment

5

Applications, which Plaintiffs aver incorporates by reference Letter No. 9 of the collective bargaining agreement, Plaintiffs' state law claims are preempted by section 301. (*See* Compl. ¶ 27). Plaintiffs admit that each of their state law claims are based on the Retention Payment Applications and, therefore, the determination of Plaintiffs' state law claims requires the interpretation of Letter No. 9 and seeks enforcement of Plaintiffs' purported rights under Letter No. 9. (Pls.' Resp. at 8-9, 11, 13, 15; *See* Def.'s Mot. at 8). The Court finds that interpretation of the Retention Payment Applications, the alleged "individual contracts," are inextricably intertwined with the interpretation of Letter No. 9 and the collective bargaining agreement.

As the Court has found that Plaintiffs' state law claims are preempted by the LMRA, the Court does not find it necessary to analyze preemption under ERISA.

        **D.**       **Interference With Benefits, 29 U.S.C. § 1140 (ERISA § 510)**

Defendant argues that Plaintiffs' ERISA claim fails as a matter of law because Plaintiffs have not exhausted their administrative remedies. "Although ERISA is silent as to whether exhaustion of administrative remedies is a prerequisite to bringing a civil action, we have held that 'the administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court.'" *Coomer v. Bethesda Hospital, Inc.*, 370 F.3d 499, 504 (6th Cir. 2004) (quoting *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir. 1991)). However, failure to exhaust administrative remedies is excused where the plan's administrative procedure would be futile or the remedy would be inadequate. *Id.*; *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998). "The standard for adjudging the futility of resorting to the administrative remedies provided by a plan is whether a clear and positive indication of futility can be made." *Fallick*, 162 F.3d at 419. "A plaintiff must show that 'it is certain that his claim will be

6

denied on appeal, not merely that he doubts that an appeal will result in a different decision.'" *Id.* (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir. 1996).

Defendant argues that Plaintiffs' First Amended Complaint fails to state allegations of exhaustion of administrative remedies with respect to Plaintiffs' § 501 claims. (Def.'s Mot. at 18). Plaintiffs admit that exhaustion of administrative remedies is required, however, assert that, as alleged in the First Amended Complaint, further attempts to exhaust administrative remedies would be futile. (Pls.' Resp. at 16; *See* First Am. Compl. ¶¶ 53, 55 ("Further attempts to exhaust union remedies would be futile"). Plaintiffs argue that Defendant has "interfered with and prevented Plaintiffs from receiving guarantees of continued Rouge Steel pension coverage as offered by Ford to similarly situated Severstal employees." (Pls.' Resp. at 16). Plaintiffs contend that there are no existing administrative remedies to pursue and Defendant likewise has not identified any existing administrative remedies. (*Id.*). Defendant replies that the references in Plaintifffs' First Amended Complaint only relate to exhaustion of "union" remedies and thus the only futility alleged involves failure to exhaust "administrative" remedies under the UAW Constitution, rather than failure to exhaust administrative remedies under the applicable ERISA-governed benefit plans. Defendant contends that "Plaintiffs have not, and cannot, credibly allege that their failure to exhaust administrative remedies under ERISA was justified by futility." (Def.'s Reply at 12).

Here, Plaintiffs have not submitted the Plan governing this dispute or the Collective Bargaining Agreement. Plaintiffs have failed to demonstrate what processes or procedures are required under the relevant Plan, what attempts have been made, if any, to follow such procedures and why such attempts have been futile or otherwise interfered with. Defendant's Motion to Dismiss Plaintiffs' claim of interference with benefits is DENIED without prejudice. Plaintiffs are

7

granted leave to amend the First Amended Complaint to allege exhaustion of administrative remedies, futility, or lack thereof.

Accordingly,

IT IS HEREBY ORDERED Defendant's Motion to Dismiss is GRANTED with respect to Count III: breach of contract; Count IV: promissory estoppel; Count V: fraud; and Count VI: innocent misrepresentation.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Count II: interference with benefits, 29 U.S.C. § 1140 (ERISA § 510) is DENIED without prejudice.

IT IS ORDERED that Plaintiffs are granted leave to amend the First Amended Complaint to allege exhaustion of administrative remedies, futility, or lack thereof. Such amendment must be made within fourteen (14) days.

       s/ DENISE PAGE HOOD
       DENISE PAGE HOOD
       United States District Judge

DATED: April 10, 2007


I hereby certify that a copy of the foregoing document was served upon counsel of record on April 10, 2007, by electronic and/or ordinary mail.

       S/William F. Lewis
       Case Manager